IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 09-cv-02924-LTB

JOY MCLERAN,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.
_____

ORDER
_____

Plaintiff, Joy McLeran, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for child's insurance benefits and disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and her application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments will not materially aid in the resolution of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE the SSA Commissioner's final order, and REMAND for further proceedings.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the SSA Commissioner's decision denying her applications for child's insurance benefits based on the earnings of her biological mother, disability insurance benefits based on her own earnings, and supplemental security income. [Administrative Record ("AR") 95, 115] After an evidentiary hearing in September 2008, an

Administrative Law Judge ("ALJ") issued a written ruling on October 1, 2008, denying Plaintiff's applications on the basis that she was not disabled because she could perform work existing in significant numbers in the national economy (Step Five). [AR 619, 38-52] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination on October 28, 2009, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 3] Plaintiff timely filed her complaint with this court seeking review of the Commissioner's decision.

## II. FACTS

Plaintiff was born on April 12, 1986; she was 20 years old when she applied for benefits, and 22 years old on the date of the ALJ's decision. [AR 184] She has a high school education, and she began taking a few community college classes in 2004, but was generally unsuccessful. [AR 264, 625-27] Plaintiff alleges that her ability to work is was limited by schizophrenia form disorder; anxiety; posttraumatic stress disorder ("PTSD"); a learning disability; emotional and behavioral problems; and panic attacks. [AR 190]

In 1993, at age 7, Plaintiff was placed in foster care, and was subsequently adopted by her foster family in 1996, following an abusive and neglectful childhood. [AR 432-42] Plaintiff had special needs, including learning disabilities and mental health issues, and was diagnosed as a child with post-traumatic stress disorder ("PTSD"). [AR 433, 442-444] She attended special education classes from elementary through high school. [AR 264]

In 2000 Plaintiff began receiving mental health treatment from the Child and Adolescent Clinic at Arapahoe/Douglas Mental Health Network for possible psychotic symptoms and progressively more bizarre behaviors. [AR 420, 430] In March 2001, Plaintiff was

2

psychiatrically evaluated by Theodore Henderson, Ph.D., MD. [AR 422] Her mental status examination indicated that her cognitive process was somewhat disorganized, and the presence of some thought blocking or derailment. [AR 423-24] Dr. Henderson assessed possible developing schizophrenia. [AR 420] In April 2001 she was diagnosed with schizoaffective disorder and began taking antipsychotic medication to manage her symptoms. [AR 416]

Plaintiff continued monthly therapy with the Child and Adolescent Clinic until 2004, when she transferred to adult services at the Arapahoe/Douglas Mental Health Network. [AR 418] In his transfer note, Dr. Henderson noted that much of Plaintiff's symptoms related to her schizophreniform disorder had resolved with medication, although she continued to have some thought disorganization characterized mostly by some tangential discussions and odd speech patterns, but that overall she had done quite well. [AR 420] Plaintiff's mental status examination was within normal limits and she did not have any signs or symptoms of psychosis. [AR 418] Her diagnosis at that time was schizophreniform disorder by history and "Rule out PTSD." [AR 418]

Ann Fleming, LCSW, was Plaintiff's therapist at Arapahoe/Douglas Mental Health from late 2006 until she stopped therapy in July 2007. [AR 213] Over the course of her treatment, Dr. Fleming noted that Plaintiff was compliant with her medications and generally doing well and symptom free. [AR 216, 222-24]

Upon applying for benefits in late 2006, Plaintiff saw psychiatrist Georganne Bley, Ph.D., for a consultive psychological examination. [AR 262-68] Dr. Bley's mental health status examination determined that Plaintiff had decreased cognitive coping resources, decreased emotional coping resources, decreased ability to live at an age-expected level of independence

3

and had decreased communication abilities. [AR 267] Dr. Bley indicated that Plaintiff's main symptoms affecting her employment were mood and cognitive difficulties. [AR 267] Her diagnosis was schizoaffective disorder in partial remission, PTSD, and a history of a learning disorder. [AR 297] Her GAF was assessed at 63. [AR 267] Dr. Bley determined that Plaintiff had an adequate ability to generally understand, remember, and carry though on simple tasks and instructions, and her ability to handle detailed instruction was fair to adequate, but Dr. Bley recommended further testing to clarify that ability. [AR 268] Plaintiff's ability to interact appropriately with the public, bosses, co-workers, and accept basic supervision was "limited by mood factors" and "cognitive difficulties," and she likely needed assistance in handling her own funds. [AR 267-268]

In January 2007, A. Ziomek (sic?), MD, a state agency non-examining psychiatrist, reviewed Plaintiff's medical records and completed a psychiatric review technique form. [AR 244-58] In addition, Dr. Ziomek completed a mental functional capacity assessment form which opined that Plaintiff had marked limitations in her ability to carry out detailed instructions, and moderate limitations in her ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, complete a normal workday or work week, and interact appropriately with the general public. [AR 240-41] Dr. Ziomek's conclusion was that Plaintiff "can do work that is simple routine and can be learned in a months time. She can relate to others but would fare better if contact with other individuals was not consistently close and on an ongoing basis." [AR 242]

In May 2007, Plaintiff's therapist, Ann Fleming, completed a form entitled "Medical Source Statement (Mental)" in which she assessed Plaintiff's work limitations as "marked" –

4

defined as serious limitation with the ability to function severely limited but not precluded – limitations in the ability to sustain an ordinary routine without special supervision and to set realistic goals or make plans independently of others. [AR 230, 232] She also indicated Plaintiff had "moderate" limitations in her abilities to: understand, remember, and carry out complex job instructions; deal with work stresses; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; get along with coworkers; maintain concentration; respond appropriately to changes in the work setting; be aware of normal hazards and take precautions; and travel in unfamiliar places or use public transportation. [AR 230-32] Fleming indicated a diagnosis of schizophreniform disorder, a current GAF score of 70, and noted that her highest GAF score in the past year was 75. [AR 233] Fleming also opined as to Plaintiff's functional limitations and found: a slight degree of limitation in her daily activities; a moderate limitation in maintaining social functioning; and a moderate limitation in concentration, persistence or pace. [AR 234]

From August 2007 through May 2008, Plaintiff saw Deborah Stegner, MD, at Arapahoe/Douglas Mental Health Network for management of her medication. [AR 207-212] Then in August 2008, Plaintiff began seeing Brenda Czaben, MD at Arapahoe/Douglas Mental Health. [AR 26] Dr. Czaben noted that she had impaired work ability, disorganized thinking, and a history of odd behavior such as hoarding foil. [AR 26] At that time Dr. Czaben wrote a letter in which she opined that Plaintiff was not capable of serving on a jury because the added stress could worsen her psychiatric condition. [AR 205] In September 2008, Dr. Czaben opined that Plaintiff had functional deficits in concentration, persistence, and pace, that she had occasional rapid speech, and that she was logical but could be easily confused. [AR 23-24] Dr.

5

Czaben continued to note these functional deficits in ongoing visits through January 2009. [AR 23-27, 13-17]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on his ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520

(e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since April 2004 (Step One). [AR 42] Although Plaintiff alleged an onset date of November 2000, when she was 14 years old, the ALJ found that the relevant time period for consideration commenced in April 2004 when Plaintiff's earnings records show that she became insured for disability benefits, and when she turned 18 as required for child's insurance benefits based on disability. [AR 38-39] In addition, in order to receive adult child insurance benefits on her biological mother's earning record, Plaintiff was required to prove that she was disabled prior to the time she attained the age of 22 in April 2008. [AR 38] As such, the ALJ found that the "directly relevant period under consideration . . . is from April 1, 2004 though the date of this decision," but that he nonetheless "considered the claimant's complete medical history." [AR 39]

The ALJ next determined that Plaintiff had no physical impairments, but did have the following severe mental impairments: schizoaffective disorder in partial remission, PTSD, and history of a learning disorder (Step Two). [AR 42] The ALJ further determined, however, that such impairments or combination of impairments did not meet or medically equal a listed impairment – as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 – deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 42-3]

7

As a result, the ALJ went on to find that Plaintiff's RFC had no physical limitations and she could perform the basic mental demands of competitive, remunerative, unskilled work. The ALJ determined that, on a sustained basis, Plaintiff could understand remember and carry out simple instructions, and she could respond appropriately to usual work situations and she can deal with changes in a routine work setting, and could relate appropriately to co-workers, supervisors, and the general public, so long as contact is not consistently and on-going. [AR 43] The ALJ then found that Plaintiff had no past relevant work (Step Four). [AR 51] As a result, plaintiff made out her prima facie case through Step Four of the sequential process.

After considering Plaintiff's age, education, work experience and RFC, however, the ALJ concluded that Plaintiff was able to perform jobs which exist in substantial numbers in the national economy (Step Five). [AR 51] As such, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under disability as defined by the Social Security Act. [AR 51-2]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). With regard to the application of the law, reversal may be

appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

**VI. ISSUES ON APPEAL**

A. RFC Assessment

I first address Plaintiff's assertion on appeal that the ALJ erred in evaluating the medical opinion evidence when assessing Plaintiff's mental functioning and her resulting RFC. Specifically, she argues that while the ALJ gave the most weight to the opinion of Dr. Ziomek – the state agency non-examining psychiatrist – and, as such, accepted and incorporated many of her determinations in Plaintiff's RFC, the ALJ failed to address Dr. Ziomek's assessment that Plaintiff was moderately limited in two areas of mental functioning. Because I agree that the ALJ's order lacks sufficient legal analysis, I reverse the Commissioner's decision and remand for additional proceedings.

The RFC is an administrative assessment of the extent to which a claimant's medically determinable impairments may cause mental restrictions that may affect their capacity to work. Social Security Ruling (SSR) 96-8. When assessing the Plaintiff's mental functioning, in order to formulate her RFC, the ALJ gave the greatest weight to the opinion of Dr. Ziomek as it was "most consistent with the overall evidence of record" and because "she is familiar with the evidentiary requirements of the disability program at issue." In addition, the ALJ found that "her opinion is well supported by her narrative discussion of the evidence." [AR 48]

9

The ALJ summarized Dr. Ziomek's opinion as follows:

> the claimant can perform work that is simple and routine, and that can be learned in one month's time. The doctor opined the claimant can relate to others but she would fare better if contact with other individuals is not consistently close and ongoing. The doctor's assessment is an implied opinion that the claimant has the mental capacity to sustain work on a regular and continuing basis. In her narrative discussion of the evidence in support of her opinion, Dr. Ziomek noted the evidence to show the claimant was currently under treatment with Seroquel, and that she was in a stable condition. The doctor noted she found no evidence of current schizophrenic symptoms. She noted the evidence to show the claimant is of average to a-little-below-average in intelligence. She noted evidence that the claimant had been working part-time in a theater for 4 to 5 years, and although she was not getting a promotion, she was taking some college courses. [AR 47]

Plaintiff argues that the ALJ's assessment of Dr. Ziomek's opinion was legally insufficient because it failed to address her determination – as set forth in the assessed severity ratings – that Plaintiff was moderately limited in her ability to: 1) maintain attention and concentration for extended periods; and 2) complete a normal workday or work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

Plaintiff relies upon *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), in which the ALJ's RFC assessment incorporated some of the moderate limitations in mental functioning found by the consultative mental examiner, but did not address the remaining assessed moderate limitations. *Id.* at 1207. The Tenth Circuit found reversible error because the ALJ had failed to explain his rejection of the limitations not contained in the RFC. *Id.* at 1208. The court stated that: "the ALJ should have explained why he [had] rejected four of the moderate restrictions on [the consultative mental examiner's] RFC assessment while appearing to adopt the others." *Id.* (citation omitted).

10

In response, the Commissioner does not dispute that the ALJ failed to address all of Dr. Ziomek's assessed moderate limitations of mental functioning. Rather, the Commissioner argues that the unaddressed limitations were not a part of Dr. Ziomek's formal opinion or conclusion, but rather were only "preliminary conclusions" that the ALJ was not required to address or explain. In support of this argument, the Commissioner argues that the evaluation form – which follows the Social Security Administration Program Operations Manuel System (DI 24510.061.A, 2001 WL 1933368) – first requires only preliminary conclusions, in the form of severity ratings, that assess the effect of a claimant's impairments in four areas of mental function. The form then requires a narrative statement or opinion of the claimant's RFC. The Commissioner asserts that this narrative assessment of the claimant's RFC – which serves to translate the assessed severity ratings into a conclusion – is "the only statement that the ALJ was required to accept or reject, and to explain his reasons therefor." Thus, because the ALJ fully accepted and incorporated the narrative portion of Dr. Ziomek's form, the failure to discuss or specifically reject the initial severity ratings assessed by Dr. Ziomek did not constitute error.

The Commissioner's argument is not persuasive. It fails to cite to any case law or authority for the proposition that assessed severity ratings are only "preliminary considerations" that need not be addressed when assessing a medical opinion. This position is, in fact, contrary to the ruling in *Haga v. Astrue*, *supra*, 482 F.3d at 1207, which requires ALJs to address all the moderate limitations assessed by a consultative mental examiner when determinating a claimant's mental RFC. The Commissioner fails to discuss or address that ruling, which I find is applicable to the circumstances of this case. Finally, to the extent that the policy statements contained in the Program Operations Manual System would indicate otherwise, I note that such

11

provisions are to be deferred to unless they are "arbitrary, capricious, or contrary to law." *Ramey v. Reinerston*, 268 F.3d 955, 964 n.2 (10th Cir. 2001)(citation omitted). Thus, I conclude that the ALJ order lacks sufficient legal analysis in that it relies upon the opinion of Dr. Ziomek – the state agency non-examining psychiatrist – by adopting his or her conclusions regarding Plaintiff mental limitations in her RFC, but then fails to incorporate or address her assessment that Plaintiff was moderately limited in two areas of mental functioning. As a result, I reverse the Commissioner's decision and remand for additional proceedings.

B. Remaining Claims of Error

As to Plaintiff's other claims of error raised on appeal, I first reject Plaintiff's contention that the ALJ erred in that the weight he assigned to her treating physicians' opinions was not supported by substantial evidence. My review of the ALJ's order reveals that the ALJ properly discussed the evidence and reasons related to the weight he assigned to the specific opinions of Ann Fleming and Dr. Czaben. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (ruling that the ALJ is required to "give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion"). The ALJ's order is sufficient "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

In addition, I likewise reject Plaintiff's claim on appeal that the ALJ erred when discounting her and her mother's credibility as related to their testimony about her limitations and their affect on her ability to work at the administrative hearing. The ALJ's order provides specific and legitimate reason for his decision to find their testimony not fully credible, which are "closely and affirmatively linked to substantial evidence and not just a conclusion in the

guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(*citing Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988)).

However, on remand I direct the ALJ to address Plaintiff's claims of error related to the determination that she is able to perform jobs which exist in substantial numbers in the national economy. Specifically, Plaintiff asserts that the ALJ erred: in either conclusively relying on the grids or, if he only used them as a framework, in failing to proved example of applicable jobs; in that there was no evidence to support the ALJ's finding that Plaintiff's non-exertional limitations did not significantly reduce the occupational base for unskilled work; in that there is no vocational expert testimony regarding the effect of her non-exertional limitation on the occupational base; and that there is no evidence related to the number of unskilled jobs available that also accommodate Plaintiff's ability to understand remember and carry out only simple instructions. In so doing, I direct the ALJ to SSR 85-15, which provides that where, as here, "there is no medically determinable impairment which limits exertion, the first issue is how much the person's occupational base – the entire exertional span from sedentary work through heavy (or very heavy) work – is reduced by the effects of the nonexertional impairment(s)." SSR 85-15 further notes that the amount of reduction "may range from very little to very much, depending on the nature and extent of the impairment(s) [and thus i]n many cases, a decisionmaker will need to consult a vocational resource." *See also* Acquiescence Ruling ("AR") 01-1(3) (indicating that the ALJ "may rely on the framework of the grid rules to support a finding that the person is not disabled without consulting a vocational expert . . ."). I also note that the ALJ should address Plaintiff's argument that the base of unskilled jobs accounts for the amount of time it takes to learn that job, but does not "completely account for the complexity of

job tasks and instructions."

## VII. REMAND

Remand for further proceedings is generally required unless it would serve no purpose. *Dollar v. Bowen*, 821 F.2d 530, 534 (10th Cir.1987)(citations omitted). Therefore, I remand this case for further proceedings and direct the ALJ to reassess Dr. Ziomek's opinion related to Plaintiff's limitation in mental functioning. In so doing, I further direct that the ALJ review and address Plaintiff's claim of error related to the determination that Plaintiff was able to perform jobs which exist in substantial numbers in the national economy as discussed above.

Accordingly, IT IS THEREFORE ORDERED that the Commissioner's decision is REVERSED and REMANDED to the SSA Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion.

Dated: October   25  , 2010 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE