IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 09-cv-02924-LTB

JOY MCLERAN,

        Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

        Defendant.

___

ORDER
___

This matter is before me on Plaintiff's Application for An Award of Attorney's Fees Under The Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA") **[Doc #24]** filed by Plaintiff, Joy McLeran, following my order reversing and remanding the Social Security Administration ("SSA") Commissioner's final decision denying her applications for disability benefits. After reviewing the parties' briefing on the matter, I DENY Plaintiff's EAJA application for the following reasons.

I. BACKGROUND

Plaintiff sought judicial review of the SSA Commissioner's final decision denying her applications for child's insurance benefits and disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and her application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. After consideration of the parties' arguments and the administrative record, I entered an order on

October 25, 2010, in which I reversed and remanded the SSA Commissioner's final decision. [Doc # 21] In that order I concluded that the Administrative Law Judge ("ALJ") erred when determining Plaintiff's mental residual functional capacity ("RFC"). As a result, I reversed the Commissioner's final decision and remanded the matter for additional proceedings. Judgment subsequently entered on November 1, 2010.

## II. LAW

Plaintiff now seeks an award of attorney fees pursuant to the EAJA, 28 U.S.C. § 2412. The EAJA provides for an award of attorney fees to a prevailing party, other than the United States, in a civil action brought by or against the United States, unless the court finds that the position of the United States was substantially justified or special circumstances make an award unjust. *See* 28 U.S.C. § 2412(d)(1)(A). The substantial justification test is one of reasonableness in law and fact; a position is substantially justified if it is "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). A "position can be justified even though it is not correct, and . . . it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct." *Id.* at 566, FN.2

"Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. §2412(d)(1)(B); *see also Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995). "[T]he EAJA – like other fee-shifting statutes – favors treating a case as an inclusive whole, rather than as atomized line-items." *Commissioner, Immigration &*

*Naturalization Serv. v. Jean*, 496 U.S. 154, 161-62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Thus, I must look at the totality of circumstances to determine whether the Government acted reasonably in taking a stance during the underlying litigation. *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 138 (4th Cir. 1993).

## III. UNDERLYING RULINGS

The ALJ determined that Plaintiff was not disabled – which became the SSA Commissioner's final decision – on the basis that she could perform work existing in significant numbers in the national economy at Step Five of the sequential evaluation process for assessing disability claims. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

When seeking review of the decision with this court, Plaintiff challenged the ALJ's ruling on several grounds. I first addressed and rejected Plaintiff's claim on appeal that the ALJ erred in weighing the opinions of Plaintiff's treating physicians because the ALJ's order properly discussed the evidence and reasons related to the weight he assigned to the specific opinions. I likewise rejected Plaintiff's claim that the ALJ erred when discounting her and her mother's credibility – as related to their testimony about her limitations and their affect on her ability to work – in that the ALJ's order provides specific and legitimate reasons supporting his determination that their testimony was not fully credible.

However, I reversed and remanded the ALJ's decision on the basis that the ALJ erred in evaluating the medical opinion evidence, when assessing Plaintiff's mental functioning and her resulting RFC, because while the ALJ accepted and incorporated many of the state agency non-examining psychiatrist's conclusions, the ALJ's order failed to address Dr. Ziomek's

assessment that Plaintiff was moderately limited in two areas of mental functioning. I concluded that the ALJ's order lacked sufficient legal analysis, and thus I reversed and remanded for additional proceedings.

In addition, on remand I directed the ALJ to address Plaintiff's claims of error related to his ultimate determination that she was able to perform jobs which exist in substantial numbers in the national economy. Specifically, I ordered the ALJ to address Plaintiff's claims that he erred: in either conclusively relying on the grids or, if he only used them as a framework, in failing to proved example of applicable jobs; in that there was no evidence to support the ALJ's finding that Plaintiff's non-exertional limitations did not significantly reduce the occupational base for unskilled work; in that there was no vocational expert testimony regarding the effect of her non-exertional limitation on the occupational base; and that there was no evidence related to the number of unskilled jobs available that accommodated Plaintiff's ability to understand remember and carry out only simple instructions.

## IV. ANALYSIS

The parties agree that the question at issue here is whether the SSA Commissioner's litigation position on appeal was substantially justified – to a degree that could satisfy a reasonable person – barring an award of attorney fees under the EAJA. 28 U.S.C. § 2412(d)(1)(A).

As an initial matter, I note that the Commissioner asserts, in support of his contention that his litigation position was substantially justified, that I rejected two of four claims of error raised by Plaintiff. The Commissioner maintains that "the fact that the court agreed with the Commissioner on several substantive issues is some evidence of the reasonableness of the

Commissioner's position." I am not persuaded by this argument, however, and to the extent that I ruled in favor of the Commissioner on some of Plaintiff's claims, I do not consider that when determining the reasonableness of the Commissioner's litigation position on the reversed issue in the context of the totality of the circumstances. *See generally Hackett v. Barnhart*, 475 F.3d 1166, 1174 (10th Cir. 2007). The Commissioner also asserts that its arguments related to the ALJ's rulings at Step Five of the sequential evaluation process for assessing disability claims was substantially justified. However, in my ruling I merely directed the ALJ to address Plaintiff's claims of error related to his determination at Step Five in light of my remand on the reversed issue. I neither addressed nor ruled on the merits of Plaintiff's related arguments, but rather directed the ALJ to review those claims and, in so doing, gave the ALJ the opportunity to clarify or rectify his rulings if necessary.

The claim of error I reversed related to the ALJ's failure to address two of Dr. Ziomek's moderate severity ratings when assessing Plaintiff's mental RFC. The Commissioner's litigation position on this issue was that while the ALJ failed to address all of Dr. Ziomek's assessed moderate limitations of mental functioning, the unaddressed limitations were not a part of a formal opinion or conclusion, but rather were only "preliminary conclusions" that the ALJ was not required to discuss or analyze. Because the ALJ fully accepted and incorporated the narrative portion of Dr. Ziomek's opinion, the failure to address the initial severity ratings did not constitute error.

I found this argument unpersuasive. In so doing I noted that the Commissioner failed to cite to any case law for the proposition that the assessed severity ratings are only "preliminary considerations" that need not be addressed when assessing a medical opinion. I relied on the

ruling in *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007), which requires ALJs to address all the moderate limitations assessed by a consultative mental examiner when determinating a claimant's mental RFC. Finally, I noted that SSA policy statements – which the Commissioner argued supported its position – are only to be deferred to when they are not arbitrary, capricious, or contrary to law. As such, I concluded that the ALJ's order lacked sufficient legal analysis when it adopted Dr. Ziomek's conclusions in formulating Plaintiff's mental RFC, but failed to incorporate or address the assessment that Plaintiff was moderately limited in two areas of mental functioning.

The Commissioner argues that its position was substantially justified in that it was supported by the policy statement – as set forth in the SSA Program Operations Manual System ("POMS") Rules – which instructs a medical consultant on how to fill out the standard form on which Dr. Ziomek documented his or her opinion and conclusions. Those rules provide that the medical consultant must "first record preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function, . . . [and] then to prepare a narrative statement of mental RFC." POMS DI 24510.61, 2001 WL 193368. Thus, in Section I of the form the medical consultant is to document his or her severity rating assessments, as preliminary conclusions, and in Section III he or she is to record "the formal narrative mental RFC assessment and . . . prepare a narrative statement for each of the [four general areas of mental function]." POMS DI 24510.65. In preparing the formal narrative of the mental RFC assessment in Section III, the medical consultant is instructed to "[i]nclude no severity ratings or nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations. Such terms do not describe function and do not usefully convey the extent of capacity limitation." *Id.*

The Commissioner asserted – on appeal and again in response here – that these instructions constitute a policy statement that the Section III conclusions incorporate the Section I severity assessments or "preliminary conclusions" and, thus, "the ALJ was only required to accept or reject Dr. Ziomek's Section III conclusions." The Commissioner argued that I must defer to the SSA policy guidelines as set forth in the POMS, unless they are "arbitrary, capricious, or contrary to law." *Ramey v. Reinertson*, 268 F.3d 955, 964 (10th Cir. 2001).

In response to this motion, the Commissioner also refers me to a recent unpublished opinion, dated January 11, 2011, in which Judge Blackburn found no reversible error when the ALJ failed to address a moderate limitation set forth in Section I of the form, because "[t]here is nothing in the record to suggest that [the narrative conclusion in Section III] does not encapsulate whatever interruptions might be caused by plaintiff's psychologically based symptoms." *Wilson v. Astrue,* 2011 WL 97234, 3 (D. Colo. 2011)(unpublished). Based on the foregoing, the Commissioner asserts that its position – that the ALJ's failure to address all of Dr. Ziomek's assessed moderate limitations of mental functioning in Section I (initial severity ratings) was not error because those determinations were not a part of a formal opinion or conclusion, but rather were only "preliminary conclusions" that the ALJ was not required to discuss – was a substantially justified litigation position.

I conclude that the Commissioner has met his burden to establish that his litigation position in this matter was sufficiently reasonable to avoid an EAJA attorney fees award in favor of Plaintiff. I agree that his argument based on the policy statements in the POMS was reasonable and, contrary to Plaintiff's argument here, the ruling in *Haga v. Astrue, supra* – that

the ALJ's failure to explain why he accepted some of the consulting mental health professional's moderate impairments when assessing the Plaintiff's RFC while seemingly adopting others – was persuasive to me, but does not foreclose the Commissioner's argument here. *Id.* 482 F.3d at 1207. This is not a case in which the ALJ applied the wrong standard or where the record lacked any evidence in support of the ALJ's findings; rather, the error I found was that the order did not demonstrate that the ALJ considered all the evidence related to Plaintiff's mental RFC. As a result, I remanded the matter for the limited purpose of clarification and further analysis of the evidence. I conclude that the Commissioner's position was substantially or "for the most part" justified in that a reasonable person could think – it has a reasonable basis in law and fact – even though I ultimately found it was not correct in this case. *See generally Pierce v. Underwood, supra*, 487 U.S. at 566.

Therefore, when looking at the totality of circumstances of this case, I conclude that the Commissioner's litigation position on appeal was substantially justified and, as such, precludes an award of attorney fees in favor of Plaintiff under the EAJA.

Accordingly, it is ORDERED that Plaintiff's Application for An Award of Attorney's Fees Under The Equal Access to Justice Act, 28 U.S.C. § 2412 **[Doc. # 24]**, is DENIED.

Dated: May 3, 2011 in Denver, Colorado.

BY THE COURT:

LEWIS T. BABCOCK, JUDGE